H8FTCAMP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4           v.                          15 CR 95 (AJN)

5   HAKEEM CAMPBELL,

6               Defendant.

7   ------------------------------x

8                                    New York, N.Y.
                                     August 15, 2017
9                                    11:05 a.m.

10

    Before:
11
                    HON. BARBARA C. MOSES,
12
                                        Magistrate Judge
13

14                       APPEARANCES

15  JOON H. KIM
         Acting United States Attorney for the
16       Southern District of New York
    RACHEL MAIMIN
17       Assistant United States Attorney

18  MICHAEL KORIBANICS
         Attorney for Defendant
19

20

21

22

23

24

25

1          (In open court, case called)

2          MS. MAIMIN:  Good morning, your Honor, Rachel Maimin

3    for the government.

4          THE COURT:  Good morning, Ms. Maimin.

5          MR. KORIBANICS:  Good morning, Michael Koribanics.  I

6    represent Hakeem Campbell, who is in custody to my right.

7          THE COURT:  Good morning, Mr. Koribanics, and good

8    morning, Mr. Campbell.

9          I understand that we are here for a change of plea.

10   Mr. Campbell, having previously pleaded not guilty, now wishes

11   to plead guilty to Count One of the indictment in this matter.

12   Is that correct, counsel?

13         MR. KORIBANICS:  Yes, Judge.

14         THE COURT:  And Mr. Campbell, English is your best

15   language?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Very well.  I have been handed a form

18   entitled Consent to Proceed before a United States Magistrate

19   Judge on a Felony Plea Allocution, which appears to bear your

20   signature.

21         Mr. Campbell, is that your signature on the form?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  What the form says is that you know you

24   have a right to have your plea taken by a United States

25   district judge, but you are agreeing to have your plea taken by

1    a United States magistrate judge, which is what I am.  I'm

2    Magistrate Judge Moses.  As a magistrate judge, I have the

3    authority to take your plea with your consent, and you are

4    entitled to all of the same rights and protections as if you

5    were before a district judge.  If you are found guilty and

6    sentenced, you will be sentenced by a district judge.

7             Did you sign the consent form voluntarily?

8             THE DEFENDANT:  Yes, ma'am.

9             THE COURT:  And before you signed it, did your lawyer

10   explain it to you?

11            THE DEFENDANT:  Yes, ma'am.

12            THE COURT:  Do you wish to proceed with your plea

13   before me this morning?

14            THE DEFENDANT:  Yes, ma'am.

15            THE COURT:  Very well.  Your consent is accepted.

16            So Mr. Campbell, as I previously discussed with your

17   lawyer, I have been told that you wish to change your plea and

18   to enter a plea of guilty as to Count One of the indictment.

19   Is that correct?

20            THE DEFENDANT:  Yes, ma'am.

21            THE COURT:  Before deciding whether to accept your

22   guilty plea, I need to ask you a series of questions.  It's

23   important that you answer my questions honestly and completely.

24   The purpose of these proceedings is to make sure that you

25   understand your rights, to make sure that you are pleading

1  guilty of your own free will, and to make sure that you are

2  pleading guilty because you are guilty and not for some other

3  reason.  Do you understand what I am saying?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  If you don't understand any of my

6  questions or if you wish at any time to consult with your

7  lawyer, please let me know and I will give you a moment to do

8  that.  It is important that you understand every question

9  before you answer.

10          Would you raise your right hand, please, Mr. Campbell.

11          I will ask Mr. Snell to swear you in.

12          (Defendant sworn)

13          THE COURT:  You may put your hand down.

14          Do you understand that you are now under oath?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  What that means is if you answer any of my

17  questions falsely, you could be prosecuted for perjury.

18          What is your full name, please?

19          THE DEFENDANT:  Hakeem Campbell.

20          THE COURT:  Do you have a middle name?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  What is that?

23          THE DEFENDANT:  Hakeem Desmond Alfonso Campbell.

24          THE COURT:  Two middle names.  Hakeem Desmond Alfonso

25  Campbell.

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  How old are you?

3           THE DEFENDANT:  I'm 24 years old.

4           THE COURT:  Are you a U.S. citizen?

5           THE DEFENDANT:  Yes, ma'am.

6           THE COURT:  How far did you go in school?

7           THE DEFENDANT:  Eleventh grade.

8           THE COURT:  Did you finish the eleventh grade?

9           THE DEFENDANT:  No, ma'am.

10          THE COURT:  You got partway through the eleventh

11   grade?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Can you read and write in English?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Are you now under the care of a medical

16   doctor or a psychiatrist or psychologist for any reason?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  Have you recently been under the care of a

19   doctor or psychiatrist or psychologist?

20          THE DEFENDANT:  For psychiatric reasons?

21          THE COURT:  So tell me about that.

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  What about a regular medical doctor?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  When were you last under the care of a

1    medical doctor?

2              THE DEFENDANT:  Sometime about two or three months

3    ago.

4              THE COURT:  What was that for?

5              THE DEFENDANT:  I had suffered a broken jaw.

6              THE COURT:  I see.  Has that been taken care of?

7              THE DEFENDANT: Yes, ma'am.

8              THE COURT:  Very well.  And since then have you needed

9    to see a doctor?

10             THE DEFENDANT:  No, ma'am.

11             THE COURT:  Do you have any condition that affects

12   your ability to see or to hear?

13             THE DEFENDANT:  No, ma'am.

14             THE COURT:  Your broken jaw did not affect your vision

15   or your hearing?

16             THE DEFENDANT:  No, ma'am.

17             THE COURT:  Do you have any condition that affects

18   your ability to think or to understand or to make judgments or

19   decisions on your own behalf?

20             THE DEFENDANT:  No, ma'am.

21             THE COURT:  In the last 24 hours have you taken any

22   drugs or medicine or pills, whether or not prescribed by a

23   doctor, that affects your mental processes?

24             THE DEFENDANT:  No, ma'am.

25             THE COURT:  In the last 24 hours have you consumed any

1    alcohol?

2            THE DEFENDANT:  No, ma'am.

3            THE COURT:  Is your mind clear today?

4            THE DEFENDANT:  Yes, ma'am.

5            THE COURT:  Do you understand what is happening in

6    this proceeding?

7            THE DEFENDANT:  Yes, ma'am.

8            THE COURT:  Does either counsel have any objection to

9    the defendant's competence to plead?

10           MS. MAIMIN:  No, your Honor.

11           MR. KORIBANICS:  I do not, Judge.

12           THE COURT:  Very well.  Mr. Campbell, have you

13   received a copy of the indictment in this case, specifically

14   the superseding indictment, which contains the formal legal

15   charge against you?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  Have you read it?

18           THE DEFENDANT:  Yes, ma'am.

19           THE COURT:  Do you want me to read it to you?

20           THE DEFENDANT:  No.

21           THE COURT:  Thank you.  Do you understand what it says

22   that you did?

23           THE DEFENDANT:  Yes, ma'am.

24           THE COURT:  Have you had time to talk to your attorney

25   about the charges and how you wish to plead?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Has your attorney explained the

3    consequences of pleading guilty?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Are you satisfied with your attorney's

6    representation of you so far?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  I'm going to explain certain

9    constitutional rights that you have.  You have these rights,

10   but they are rights that you will be giving up if you enter a

11   guilty plea, so please listen carefully to what I am going to

12   tell you.  If you don't understand something, stop me, and

13   either your attorney or I will explain the issue more fully.

14   Will you do that?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Under the Constitution and laws of the

17   United States, you have the right to plead not guilty to all of

18   the charges against you contained in the indictment.  Do you

19   understand that?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  If you plead not guilty, you will be

22   entitled under the Constitution to a speedy and public trial by

23   a jury of all of those charges.  At the trial you will be

24   presumed innocent, the government will be required to prove you

25   guilty beyond a reasonable doubt before you could be found

1    guilty.  You could not be convicted unless a jury of twelve

2    people agreed unanimously you that you were guilty beyond a

3    reasonable doubt.  Do you understand that?

4           THE DEFENDANT:  Yes, ma'am.

5           THE COURT:  If you went to trial then at that trial

6    and at every stage of the case you would have the right to be

7    represented by an attorney.  If you couldn't afford one, an

8    attorney would be appointed at no cost to you.  Even if you

9    retained a private lawyer and then ran out of money, an

10   attorney would be appointed at no charge to you to continue

11   your representation.  You would be entitled to an attorney all

12   the way through trial and not just for a guilty plea.  So your

13   decision to plead guilty should not depend on whether you can

14   afford a lawyer.  Do you understand that?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  During a trial the witnesses for the

17   prosecution would have to come to court and testify in your

18   presence where you could see them and hear them and your

19   lawyers could cross-examine them.  If you wanted, your lawyer

20   could offer evidence on your behalf as well.  Your lawyer would

21   be able to use the power of the court known as subpoena power

22   to require witnesses to come to court to testify even if they

23   did not want to come.  Do you understand that?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  At a trial you would have the right to

1    testify in your own defense if you wished.  You would also have

2    the right not to testify.  If you chose not to testify, that

3    could not be used against you in any way.  No inference or

4    suggestion of guilt would be permitted from the fact that you

5    did not testify.  Do you understand that?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  If you were convicted at trial you would

8    have the right to appeal that verdict to a higher court.  Do

9    you understand that?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  And as I said before, you have the right

12   to plead not guilty.  Even today I know you came to court for

13   the purpose of pleading guilty, but you have the right to

14   change your mind, persist in your not guilty plea, and to go to

15   trial.  But if you do plead guilty, and if the Court accepts

16   your plea, you will give up the right to a trial and the other

17   rights that go with it that I just described to you.  If you

18   plead guilty, there will be not be any trial.  All that will

19   remain to be done will be to impose a sentence.  You and the

20   government will be able to make certain arguments about what

21   that sentence should be, but there will not be any further

22   trial to determine whether you are guilty or not guilty of the

23   charges to which you plead guilty.  Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Do you also understand that the decision

1   as to the appropriate sentence in your case will be entirely up

2   to the sentencing judge, Judge Nathan?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  Not me, not the government, not your

5   lawyer.  Judge Nathan will be limited only by what the law

6   requires.  This means that even if you are surprised or

7   disappointed by your sentence, you will still be bound by your

8   guilty plea and you won't be able to take it back.  Do you

9   understand that?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Finally, if you do plead guilty, you will

12  be giving up your right not to incriminate yourself.  That

13  means that I can and I will ask you questions about what you

14  did.  You will have to answer those questions truthfully.  The

15  purpose of those questions is to satisfy me that you are

16  actually guilty.  By pleading guilty, in other words, you will

17  be admitting what lawyers call your factual guilt as well as

18  your legal guilt.  Do you understand that?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Count One of the indictment in your case

21  charges you with participating in a racketeering conspiracy in

22  violation of Title 18 of the United States Code, Section

23  1962(d), from at least in or about 2007 up to and including in

24  or about 2016.  I'm going to ask the Assistant United States

25  Attorney, Ms. Maimin, to state the elements of that charge.

1    The elements are the things the government would have to prove

2    beyond a reasonable doubt at trial.

3         MS. MAIMIN:  If this case proceeded to trial, the

4    government would have to prove the following elements on Count

5    One:  First, that there was an agreement among two or more

6    people to participate in an enterprise that would affect

7    interstate commerce through a pattern of racketeering activity;

8    second, that the defendant knowingly and willfully became a

9    member of that conspiracy; and third, that the defendant agreed

10   that he or another person would commit at least two

11   racketeering and acts.

12        The government would also have to prove that venue was

13   proper in this district by a preponderance of the evidence

14        THE COURT:  Thank you.  Mr. Campbell, I'm now going to

15   tell you the maximum possible penalty for the crime charged in

16   Count One.  The maximum means the most that could possibly be

17   imposed.  It does not mean that this is necessarily what you

18   will receive, but by pleading guilty you will expose yourself

19   to the possibility of receiving a punishment or combination of

20   punishments up to the maximum that I'm about to describe.  Do

21   you understand that?

22        THE DEFENDANT:  Yes, ma'am.

23        THE COURT:  The maximum term of imprisonment for the

24   crime charged in Count One is life, life in prison.  If are

25   given a prison sentence of less than life, your prison sentence

1  could be followed by up to five years of supervised release.

2  Supervised release means after your release from prison you

3  will be subject to supervision by the probation department.  If

4  you are placed on supervised release and thereafter violate any

5  condition of that supervised release, the Court can revoke the

6  term of supervised release previously imposed and return you to

7  prison without giving you any credit for time previously served

8  on post-release supervision.

9       In addition to these restrictions on your liberty, the

10  maximum possible penalty for the crime charged in Count One

11  includes financial penalties.  The maximum allowable fine is

12  $250,000 or twice the profits of the criminal activity or twice

13  what someone other than yourself lost because of the criminal

14  activity, whichever is greater.  You will also be required to

15  pay restitution to any victim or victims of the crime in an

16  amount that the Court decides is required to compensate them

17  for any injuries.  And in addition, by pleading guilty you will

18  admit to forfeiture allegations in the indictment and agree to

19  forfeit any property within the scope of Title 18 of United

20  States Code, Section 1963.

21       I am also required by law to tell you there is an

22  additional special assessment, an extra fine of $100 that is

23  required to be imposed on each count of conviction.

24       Now you told me you're a U.S. citizen, correct?

25       THE DEFENDANT:  Yes, ma'am.

1           THE COURT:  The reason I ask that question is for

2     individuals who are not United States citizens a guilty plea

3     may also have adverse consequences for the ability to remain in

4     or return to the United States, including removal, deportation,

5     denial of citizenship, and denial of the permission of United

6     States in the future.  For a non-U.S. citizen, removal or

7     deportation may be mandatory, and if that does happen, the

8     non-U.S. citizen will still be bound by his guilty plea, that

9     is, he will not be able to withdraw it regardless of any advice

10    received from counsel or others regarding the immigration

11    consequences of the plea.  Do you understand that?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Has anyone threatened you or coerced you

14    in any way to try to get you to plead guilty?

15          THE DEFENDANT:  No, ma'am.

16          THE COURT:  I understand you have a written plea

17    agreement.  My courtroom deputy is handing it to me.  It is a

18    letter dated August 15, 2017, addressed to your attorney,

19    Mr. Koribanics, and it appears to have your signature on the

20    last page, which I am holding up.

21          Did you sign this plea agreement today?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Did you read it before you signed it?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Did you discuss it with your attorney?

1           THE DEFENDANT:  Yes, ma'am.

2           THE COURT:  Do you understand its terms?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Has anyone promised you or offered you

5      anything to get you to plead guilty other than what is in the

6      written plea agreement?

7           THE DEFENDANT:  No, ma'am.

8           THE COURT:  Looking at page 4 of your plea agreement I

9      see that you and the government have reached agreement

10     regarding the appropriate calculation of your sentence under

11     part of our law known as the sentencing guidelines.  Is that

12     right?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  What it says here is that you and the

15     government have agreed that the appropriate guideline

16     sentencing range for you is 108 to 135 months, 108 to 135

17     months in prison, and that the appropriate monetary fine range

18     is 30,000 to $300,000.

19          Ms. Maimin, why does it say $300,000 when on page 1

20     you state that the maximum fine is $250,000?

21          MS. MAIMIN:  It's the greatest of $250,000 or twice

22     the gross pecuniary gain or twice the pecuniary loss.

23          THE COURT:  So the $300,000 is based on that

24     calculation?

25          MS. MAIMIN:  $300,000 is based on the guidelines in

1   the sentencing guidelines manual for the offense level the

2   defendant is pleading guilty to.  The guidelines range is

3   30,000 to $300,000.

4            THE COURT:  Thank you very much.  I appreciate you

5   clearing that up for me.

6            So Mr. Campbell, you see those ranges there, 108 to

7   135 months imprisonment, and 30,000 to $300,000 fine.  Do you

8   understand those ranges?

9            THE DEFENDANT:  Yes, ma'am.

10           THE COURT:  All right.  Under this agreement, with

11  certain limited exceptions also set forth on page 4, neither

12  you nor the government is allowed to argue to the sentencing

13  judge for a calculation which is different than the calculation

14  set forth in the agreement.  Do you understand that?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  Do you also understand that in this

17  agreement you have also limited your right to appeal from any

18  sentence that may be imposed?

19           THE DEFENDANT:  Yes, ma'am.

20           THE COURT:  Specifically, do you understand that as

21  long as the district judge sentences you to a prison term no

22  longer than 135 months, any lawful sentence of supervised

23  release, and a fine no greater than $300,000, you are giving up

24  your right to challenge your sentence, whether by direct

25  appeal, writ of habeas corpus, or otherwise?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Do you understand that under the terms of

3     your plea agreement, even if you later learn that the

4     government withheld from your counsel certain information that

5     would have been helpful to you in defending yourself at trial,

6     you will not be able to complain about that or withdraw your

7     guilty plea on that basis?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Do you understand that under the terms of

10    your plea agreement any recommendations or calculations

11    relating to sentencing are not binding on the sentencing judge?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  The sentencing judge could reject those

14    recommendations or calculations and could impose a more severe

15    sentence than you expect without permitting you to withdraw

16    your plea of guilty.  The sentencing judge is required to make

17    her own independent calculation of the appropriate sentencing

18    range under the sentencing guidelines.  She will also have the

19    discretion to give you a sentence below or above that range up

20    to maximum sentence that I told you about earlier.

21         In addition to the guidelines and possible departure

22    from the guidelines, the sentencing judge will also consider

23    the factors set forth in 18, United States Code, Section

24    3553(a).  In other words, the sentencing judge will pronounce

25    whatever sentence she believes is the appropriate sentence for

1   you, even if that sentence is different from the ones set forth

2   in your plea agreement.  Do you understand that?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  In addition, the Court will consider a

5   presentence report prepared by the probation department in

6   advance of your sentencing, and before you're sentenced you and

7   the government will have an opportunity to review that report

8   and challenge any of the facts reported in it.

9           Do you understand there's no parole in the federal

10  system?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  If you are sentenced to prison you will

13  not be released on parole.  Let me ask both counsel, beginning

14  with the government, if there are any other provisions of the

15  plea agreement you would like me to review with the defendant.

16          MS. MAIMIN:  No, your Honor.

17          MR. KORIBANICS:  No, thank you, your Honor.

18          THE COURT:  Thank you, counsel.

19          And one more time, Mr. Campbell, have any promises

20  been made to you to influence you to plead guilty other than

21  what is actually in your written plea agreement?

22          THE DEFENDANT:  No, your Honor.

23          THE COURT:  Have any promises been made to you

24  concerning the actual sentence you will ultimately be

25  receiving?

1          THE DEFENDANT:  No, ma'am.

2          THE COURT:  You have been advised of the charges

3     against you, the possible penalties you face, and the rights

4     you are giving up.  Is it still your intention to plead guilty

5     to Count One of the indictment?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Is your plea voluntary and made of your

8     own free will?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  Please stand up.

11         Mr. Campbell, with respect to Count One, how do you

12     plead, guilty or not guilty?

13         THE DEFENDANT:  Guilty.

14         THE COURT:  You may be seated.

15         Please tell me in your own words what you did that

16     makes you guilty of that crime.

17         THE DEFENDANT:  I participated --

18         MR. KORIBANICS:  Judge, may I help direct him to --

19     with the Court's permission, direct him into a few questions,

20     direct him into it?

21         THE COURT:  Sorry?

22         MR. KORIBANICS:  May I direct him into asking one or

23     two questions so I could get a time frame?

24         THE COURT:  Any objection?

25         MS. MAIMIN:  No, Judge.

1            THE COURT:  Go ahead, counsel.

2            MR. KORIBANICS:  Mr. Campbell, you were associated

3   with a group known in the Bronx, New York, as Big Money Bosses,

4   correct?

5            THE DEFENDANT:  Yes.

6            MR. KORIBANICS:  And during your association with

7   them, which was a time period of about during the time period

8   of the indictment, 2007 and 2016, yours was more like 2014,

9   correct?

10           THE DEFENDANT:  Yes.

11           MR. KORIBANICS:  And during that occasion, tell the

12  judge what you did on two occasions on their behalf and with

13  agreement of two or more people on behalf of Big Money Bosses.

14           THE DEFENDANT:  I participated in at least two

15  narcotics transactions.

16           MR. KORIBANICS:  What was that narcotic you were

17  selling?  Was it crack cocaine?

18           THE DEFENDANT:  Yes, sir.

19           MR. KORIBANICS:  And you agreed that it was over

20  280 grams, correct?

21           THE DEFENDANT:  Yes, sir.

22           THE COURT:  Mr. Campbell, tell me the name of the

23  group you were involved with?

24           THE DEFENDANT:  Big Money Bosses.

25           THE COURT:  And did you voluntarily join the Big Money

H8FTCAMP

1  Bosses?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  You say that you sold narcotics on two

4  occasions, is that right?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  And what narcotic did you sell?

7          THE DEFENDANT:  Crack cocaine.

8          THE COURT:  On both occasions?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Where did you do that?

11          THE DEFENDANT:  East 224th Street.

12          THE COURT:  And is that in the Bronx, New York?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  And when you sold narcotics, tell me about

15  what kind of drugs it was.

16          THE DEFENDANT:  Crack cocaine.

17          THE COURT:  When you sold crack cocaine on those two

18  occasions in the Bronx, did you enter into any agreement with

19  any person to do that?

20          THE DEFENDANT:  No, ma'am.

21          THE COURT:  You just came up with it all by yourself

22  or was it part of a group agreement?

23          THE DEFENDANT:  It was part of a group agreement.

24          THE COURT:  So is it fair to say that you did agree

25  with other persons to engage in those narcotic sales?

H8FTCAMP

1         THE DEFENDANT:  Yes, ma'am.

2         THE COURT:  On both occasions?

3         THE DEFENDANT:  Yes, ma'am.

4         THE COURT:  And at the time that you engaged in the

5    activities you just described to me, did you know that what you

6    were doing was wrong?

7         THE DEFENDANT:  Yes, ma'am.

8         THE COURT:  Ms. Maimin, would like me to ask any other

9    questions of the defendant?

10        MS. MAIMIN:  No, your Honor, I will simply note that

11   crack cocaine is not manufactured or sold in New York.

12        THE COURT:  All right.

13        MS. MAIMIN:  Or grown in New York.  Sorry.

14        THE COURT:  Does the government represent that it has

15   sufficient evidence to establish guilt beyond a reasonable

16   doubt at trial, and would you like to make a proffer?

17        MS. MAIMIN:  Yes, your Honor.  If this case proceeded

18   to trial the government would prove that the defendant was a

19   member of the Big Money Bosses, or BMB, which was a violent

20   street gang that controlled territory in the northern Bronx,

21   committed various acts of violence, including murder, attempted

22   murder and robbery, and sold drugs, including crack cocaine and

23   marijuana, that this defendant was a member of BMB who agreed

24   to sell crack cocaine with other members of the gang on

25   numerous occasions during the time period between 2007 and

1   2016.

2              THE COURT:  Thank you.

3              Mr. Campbell, on the basis of your answers to my

4   questions and my observation of your demeanor here in court, I

5   find that you are competent to enter a guilty plea.  I'm

6   satisfied that you understand your rights, including your right

7   to go to trial, that you are aware of the consequences of your

8   plea, including the sentence that may be imposed, that you are

9   voluntarily pleading guilty, and that you have admitted that

10  you are guilty as charged in Count One of the indictment.  For

11  these reasons, I will recommend that the district judge accept

12  your plea.

13             I will ask the government to order a copy of the

14  transcript and to submit it to Judge Nathan together with the

15  additional paperwork that she will need to act on my

16  recommendation.

17             Has she set a sentencing date?

18             MS. MAIMIN:  Yes, your Honor, November 30, 2017, at

19  12:45 p.m.

20             THE COURT:  Mr. Campbell, you will be sentenced on

21  November 30 of this year unless the district judge changes that

22  date.  I will direct that a presentence report be prepared.

23             Ms. Maimin, can you deliver the case summary to the

24  probation department within two weeks?

25             MS. MAIMIN:  Yes.

1          THE COURT:  And Mr. Koribanics, can you be available

2     for interview within two weeks?

3          MR. KORIBANICS:  Absolutely, Judge.

4          THE COURT:  With your client?

5          MR. KORIBANICS:  Yes, Judge.

6          THE COURT:  Okay.  Good.  Mr. Campbell will remain

7     detained, is that correct?

8          MR. KORIBANICS:  Judge, that's my understanding, yes.

9          THE COURT:  Okay.  Anything further on this matter

10    from either side?

11         MS. MAIMIN:  Not from the government.

12         MR. KORIBANICS:  No, thank you very much, Judge.

13         THE COURT:  Thank you, counsel, Mr. Campbell.  We're

14    adjourned.

15                              o0o

16

17

18

19

20

21

22

23

24

25