# KORIBANICS AND KORIBANICS
## ATTORNEYS AT LAW

MICHAEL P. KORIBANICS*

JOHN KORIBANICS
OF COUNSEL
(1921-2002)

685 VAN HOUTEN AVENUE
CLIFTON, N.J. 07013-2197
PHONE (973) 778-1800
FAX (973) 778-3750

<u>VIA E-FILING</u>

November 20, 2017

Hon. Allison J. Nathan, U.S.D.J.
United States District Court, SDNY
Thurgood Marshall U.S. Courthouse
40 Foley Square, Room 2102
New York, NY 10007

RE: U.S.A. vs. HAKEEM CAMPBELL
Docket No. 15-CR-00095-037 (AJN)

Dear Judge Nathan:

On behalf of Hakeem Campbell, I respectfully request that the Court sentence him below the Guideline and in accord with the sentencing goals as set forth in 18 U.S.C. 3553.

Hakeem Campbell appeared before the Honorable Barbara C. Moses on August 15, 2017 and allocated to his criminal conduct as charged in Count 1 only.

I. ADVISORY GUIDELINE COMPUTATION

Pursuant to that Plea agreement, both the Government and Mr. Hakeem Campbell agree with the advisory guideline, presentence report and criminal history computation contained in the plea agreement and presentence report which is as follows:

An offense level of 29 and a Criminal History of III, 108 – 135 months.



II. **WE ASK THAT THE COURT TAKE INTO ACCOUNT THE FOLLOWING FACTS TO GIVE A RATIONAL AND MEANINGFUL CONSIDERATION OF THE FACTORS ENUMBERATED IN 18 U.S.C. 3553(a) AND SEEK AN INDIVIDUALIZED ASSESSMENT BASED ON THE FACTS PRESENTED**

The now "advisory" Guidelines, 18 U.S.C. §3553(a) requires courts to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph 2 of this subsection." Section 3553(a)(2) states that such purposes are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) further directs the sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense.

### 1. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature of the offense of conviction is very serious. It is mitigating that Hakeem Campbell's actions were motivated by his environmental/social circumstances and overwhelming desire to be accepted by his peers.

### 2. THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

When the defendant was three years old, his mother immigrated to the United States and brought Campbell with her. He has continuously lived in the Bronx since that time. His father remained in Jamaica for several years. Until his father joined them in New York, the defendant was raised as if in a single-parent household. He described his upbringing as "very rough" because his mother, who was a house cleaner at the time struggled to provide for their household. Campbell's father immigrated to the United States approximately 15 years ago. The household finances became "somewhat better," but his two younger siblings were born and they remained in a two-bedroom apartment. The defendant also lived in a "rough" neighborhood. Although Campbell was never directly impacted by the violence or drugs, he

frequently noticed a lot of people hanging out on the streets and he was curious about what was going on. (P.S.R, Page 23, ¶ 89)

Campbell was often in trouble in school because he regularly "acted out." By the time the defendant was thirteen, he was spending much of his time on the streets with friends. They consumed alcohol and used drugs. He was also impacted by street violence. In tenth grade, on his way home from school, Campbell was reportedly robbed and seriously assaulted. Around the same time his mother decided she would no longer pay for him to attend a private high school because he was no longer taking school seriously and she wanted Campbell to transfer to public school. He state that "I was eager to start taking care of myself" and "My attention had already jumped to the streets." Ultimately, Campbell dropped out of school and started spending time "on the street" full time. (P.S.R., Page 23, ¶ 90)

Anniebelle Campbell was interviewed via telephone on September 1, 2017. She confirmed that the defendant attended private schools until tenth grade. The family is from the Morant Bay area of St. Thomas and not Kingston. She stated that Campbell's father has always been present in his life and that she always provided him with the best she was able to afford. His conduct is not a reflection of his upbringing. She will remain supportive of her son and he is welcome to return to their home. (P.S.R, Page 23, ¶ 91)

In 2011, the defendant met SW, age 29, at a local barber shop. They have a child together. SC is two years old and healthy. She lives with her mother in the Bronx. They had no formal child support agreement, but the defendant would assist SW with cash when it was available. SW has visited the defendant in prison and remains supportive. She sometimes brings SC with her. (P.S.R., Page 24, ¶92)

SW was interviewed on September 25, 2017, via telephone. She confirmed the circumstances of her relationship with the defendant. She stated that their daughter is healthy and otherwise doing well. SW works part-time as a waitress, but is currently receiving unemployment benefits, because her hours were reduced. Her mother, or the defendant's mother care for their daughter when SW is working. She stated that Campbell is a great father and does "everything" for their daughter. He used to watch SC when SW was working. SW stated that the defendant cannot live with her at her current residence when he is released. She lives with her mother and brother. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.
Additionally, while she is on good terms with the defendant and anticipates that

they will continue to date, they argued regularly when he was around and she is unsure of their ability to have a successful relationship if living together full time. (P.S.R., Page 24, ¶93)

In September 2016, the defendant 
(P.S.R., Page 24, ¶ 96)

3. THE KINDS OF SENTENCES AVAILABLE AND RECOGNITION & CONSIDERATION TO AVOID UNWARRANTED SENTENCE DISPARITY

The maximum sentence on count 1 is life.

According to the presentence report as to the status of co-defendant's, pages 7-13, those who have been sentenced to the same count as Mr. Campbell have had sentences as high as 133 months to as low as 366 days. 16 of those sentences were in the 366 day to 72 month range.

We ask the court to sentence Mr. Campbell within the range of 24 -48 month range.

4. THE GUIDELINES SENTENCING RANGE AND GUIDELINES POLICY STATEMENT

The Supreme Court's decision in Booker/Fanfan requires sentencing courts to treat the Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. §3553(a). In this instance, a below Guideline sentence is appropriate.

5. REFLECTING THE SEROUSNESS OF THE OFFENSE, PROMOTING RESPECT FOR THE LAW. PROVIDING JUST PUNISHMENT, DETERRING CRIMINAL CONDUCT, PROTECTING THE PUBLIC

18 U.S.C. §3553(a) requires courts to impose sentence "sufficient, but not greater than necessary" to reflect the seriousness of the offense, to promote

respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training.

Mr. Campbell has accepted responsibility for his action. He has also demonstrated an acknowledgment of substance abuse and will avail himself to any programs available in the Federal system.

His family commitment to support him upon release will help to insure that the public be protected from further crimes.

## 6. HE HAS SHOWN THE ABILITY TO MAINTAIN EMPLOYMENT

According to Spacious Living Group (SLG Construction), the defendant was hired on December 8, 2015, as a full-time employee, earning $12 an hour. He was laid off on February 12, 2016, due to lack of work. The company also provided a copy of the defendant's OSHA 10-Hour Construction Safety completion certificate. (P.S.R., Page 26, ¶ 112)

## CONCLUSION

Hakeem Campbell apologizes for his criminal behavior. He is remorseful for his actions.

Enclosed please find letters in support of Mr. Hakeem Campbell's character. (Exhibit A)

If there is anything else the court needs, requires or wishes to have clarified, please contact us and we will provide same.

Respectfully yours,

/Michael P. Koribanics, Esq.

cmr
Enc.
cc:
Rachel Maimin, AUSA (Via e-mail)
Rebekah Dawson, USPO (Via e-mail)
Hakeem Campbell