UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
UNITED STATES OF AMERICA                                            :
                                                                    :   S2 15 Cr. 95 (AJN)
           - v. -                                                   :
                                                                    :
HAKEEM CAMPBELL,                                                    :
     a/k/a "Ocky,"                                                  :
                    Defendant.                                      :
                                                                    :
------------------------------------------------------------------- X

## SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA

 

JOON H. KIM
Acting United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

RACHEL MAIMIN
HAGAN SCOTTEN
JESSICA FEINSTEIN
DREW JOHNSON-SKINNER
Assistant United States Attorneys
     - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
UNITED STATES OF AMERICA                                           :
                                                                   :   S2 15 Cr. 95 (AJN)
            - v. -                                                 :
                                                                   :
HAKEEM CAMPBELL,                                                   :
        a/k/a "Ocky,"                                              :
                                                                   :
                             Defendant.                            :
                                                                   :
------------------------------------------------------------------ X
```

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum in advance of the sentencing of defendant Hakeem Campbell, a/k/a "Ocky," scheduled for November 28, 2017. Campbell was a violent member of a violent street gang—the Big Money Bosses ("BMB")—with which he committed a shooting, carried guns, and sold drugs. A sentence within the range of 108 to 135 months provided by United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") and the parties' plea agreement is therefore necessary to protect the community from Campbell, deter his dangerous and destructive conduct, and ensure respect for the law.

**I.   Procedural History**

On April 27, 2016, the S2 Indictment in this case was unsealed, charging 63 members and associates of BMB with: (1) racketeering conspiracy, in violation of Title 18, United States Code Section 1962; (2) narcotics conspiracy, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 846; (3) narcotics distribution, in violation of Title 21, United States Code, Section 860; and/or (4) firearms discharge, in violation of Title 18, United

States Code, Section 924(c)(1)(A)(iii).  The defendant is charged in all four counts.  He was arrested the same day the S2 Indictment was unsealed.

On August 15, 2017, Campbell pled guilty to Count One.  This Court accepted his plea on August 21, 2017.

## II. Offense Conduct

### A. Background

Beginning in December 2014, the New York City Police Department, the Drug Enforcement Administration, Homeland Security Investigations, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted an investigation into two rival street gangs— BMB and the 2Fly YGz ("2Fly")—that were operating in the Bronx, New York.  The investigation revealed that since at least in or about 2007, up until in or about 2016, members of BMB and 2Fly were involved in a variety of racketeering acts, including murders, attempted murders, robberies, narcotics trafficking, bank fraud, and counterfeit currency offenses.

### B. BMB

The structure of BMB is described accurately in the PSR.

BMB was a subset of the "Young Bosses," or "YBz" street gang, which operates throughout the New York City area.  BMB—whose members also sometimes refer to themselves as the "Money Making Mafia" or "Triple M"—operated primarily on White Plains Road from 215th Street to 233rd Street in the Bronx, which is a long stretch of road under a subway train overpass that is hedged on each side by single-family homes and local commercial establishments.  BMB's narcotics trafficking activity was based principally in the vicinity of White Plains Road and 224th Street, an open-air drug spot that was referred to by gang members as the "Forts."  BMB members sold drugs and down White Plains Road, however, including at a

spot on 219th Street and a house on 230th Street.  BMB members sold crack cocaine, marijuana, and prescription pills, including Percocet pills (i.e., oxycodone).  BMB members kept firearms at each of these White Plains Road locations.  BMB members also operated a drug spot on Boston Road and Eastchester Road in the Bronx, which they refer to as "B Road."  BMB members who worked principally at the B Road spot typically refer to themselves as "Blamma."  Generally speaking, BMB members were encouraged to continue openly "jacking," or proclaiming their membership in the gang, and many did so not only in person but also through social media websites such as Facebook.

In addition to its narcotics trafficking, BMB members and associates engaged in acts of violence, including shootings, stabbings, and gang assaults; these acts of violence protected the power of the gang, deterred attacks from rivals, and secured the gang's territories and drug spots.  Moreover, members who engaged in a sufficient amount of violence could earn a leadership position, which was referred to as a "Big Suit."  Members with "Big Suit" status were further subcategorized as, among other things, "Burberry Suits," "Louis Suits," "Gucci Suits," Ferragamo Suits," and "Sean John Suits," in order to signify their relative rank in the gang.  Among other things, a BMB member with "Big Suit" status had the authority to recruit other individuals into the gang.  Two of the highest-ranking "Big Suits" in BMB were NICO BURRELL, a/k/a "Zico Nico," and DOUGLAS MCLARTY, a/k/a "Q Don."  Both BURRELL and MCLARTY enhanced their status in the gang, in part, by committing attempted murders when they were each juveniles.

Members of BMB rose in status and rank within the gang not only by engaging in acts of violence, but also by maintaining their membership in the gang for a long period of time.  Members who were loyal associates for a substantial amount of time are referred to as "Day One

Niggas," meaning that they have been associating with the gang since its earliest days. For example, in a posting on Facebook on July 7, 2013, BMB member RASHEID BUTLER, a/k/a "Rah," wrote: "i love my Day1 Niggas that was here since this #TripleM Shit 1ST STARTED." Similarly, BMB leader NICO BURRELL, a/k/a "Zico Nico," discusses the "Day One" concept in a rap video posted on YouTube in December 2015 and entitled "Live From Gutter." In the video, BURRELL raps, "No new niggas, only day one / I know they ain't tellin' if that day come," after which another rapper repeats in the background, "no snitchin.'"

BMB has, more generally, developed a gang norm against "snitchin,'" or cooperating with law enforcement. For example, a BMB associate posted on Facebook on July 20, 2011, "Like QuDOn Said 'No Snitchin Policy'"; the reference to "QuDOn" is a reference to MCLARTY, who is one of BMB's leaders and whose alias is "Q Don." BMB's norm against "snitchin'" was fostered through YouTube videos and social media postings, including postings in which gang members are praised for their refusals to cooperate with law enforcement in particular instances. The norm is also enforced through disparagement of and threats of violence against BMB members who are suspected of having violated the norm by cooperating. During the course of this investigation, law enforcement learned of at least one instance in which a BMB member's home was fired upon because he made a statement to law enforcement about individuals with whom he had committed a robbery. During another instance, the child of a suspected cooperator in this case was threatened and spat upon in the street. The norm against cooperation facilitates the gang's criminal enterprise and is one of the reasons why members of BMB tend to commit their robberies and fraud offenses with other members of BMB.

Many of the specific acts of violence committed by BMB members related to its longstanding rivalry with 2Fly, which is based principally in the nearby Eastchester Gardens

public housing development ("Eastchester Gardens"), but which also has members who live in the "Valley" area just east of BMB's "B Road" spot on Boston Road and Eastchester Road. BMB also has developed rivalries with other street gangs in the northern Bronx, including the "Young Shooter Gang," or "YSGz," which is based in the Edenwald public housing development ("Edenwald"), and the "Slut Gang," which is based in the Boston-Secor public housing development ("Boston-Secor"). In connection with these rivalries, BMB members developed a practice of "mobbing," meaning to gather in large groups and travel to the base of operations of a rival gang to engage in violence there. Members of rival gangs also sometimes went "mobbing" to attack or attempt to attack BMB at its bases of operations. Videos of "mobbing" incidents were posted on YouTube. The close proximity of the BMB, 2Fly, YSGz, and Slut Gang bases of operations—all of which are in or on the border of the New York City Police Department's 47th Precinct—contributed to the frequency of acts of violence.

In addition to acts of violence, members and associates of BMB promoted their gang and disparaged rival gang members by highlighting a distinguishing feature of BMB: it is not based in a housing development, as are its principal rivals 2Fly (in the Eastchester Gardens), YSGz (in Edenwald), and the Slut Gang (in Boston-Secor). As noted above, BMB principally operated along White Plains Road, a long stretch of road hedged on each side by single-family homes and local commercial establishments. The name of the gang ("Big Money Bosses") and the other allusions to wealth that the gang employs (for example, the brand-name clothing retailers used to identify leadership positions) all serve to underscore this difference. In addition, members and associates of BMB have publicly mocked the living conditions of the housing developments in which many of their rivals live. For example, in a Facebook post on July 10, 2014, BMB member DONQUE TYRELL, a/k/a "Polo Rell," posted a photograph of a young child laying on

5

a bed and covered with cockroaches, with the caption "MEANWHILE IN EDENWALD."  In connection with the posting of this picture, TYRELL wrote, "Dirty ass project," followed by six smiley-face "emoticons."  Similarly, in a Facebook posting on May 28, 2014, BMB member MASHUD YODA, a/k/a "Papa Ola," writes, "No Lie ECG [*i.e.,* the Eastchester Gardens] The Dirtiest PROJECTS UPTOWN . . . . Like OBAMA Said CHANGE But I Guess He forgot Bout ECG !!"

Consistent with this feature of BMB, members and associates of the gang engaged not only in narcotics distribution and robberies to enrich its members and victimize rivals, but also committed a variety of frauds, including bank fraud and counterfeit currency offenses.  To perpetrate some of these fraud offenses, BMB members and associates often employed their girlfriends and female acquaintances.

### C. Campbell's Role

Campbell was a member of BMB who carried guns with the gang, sold drugs for the gang, and most significantly, committed a shooting as part of his membership in the gang.  In particular, on March 10, 2013, Campbell and fellow BMB members and associates Javone Pearce and Lamar Francis drove by the residence of a rival and opened fired, with Campbell himself firing multiple rounds into the rival's home.  (*See* PSR ¶ 47).  Although the rival and his family were inside the house at the time—a fact which Campbell ascertained prior to committing the shooting—fortunately no one was harmed.  (*Id.*).

Campbell also encouraged others to commit similar acts of violence.  For example, on December 12, 2014, Campbell mocked fellow BMB member Dominick Sherland for failing to retaliate against rival gang members who had shot and paralyzed Sherland's brother.  (PSR ¶ 38).  In addition, Campbell possessed firearms with other BMB members on multiple occasions other

6

than the March 10, 2013 shooting: On August 23, 2011, Campbell—again acting with Lamar Francis—was arrested in possession of a defaced .22 caliber handgun in route to territory controlled by a rival gang. (PSR ¶ 46). On July 6, 2015, Campbell admitted to NYPD officers that he had access to a firearm hidden at BMB's "Forts" drug-selling location, and the officers recovered a located .25 caliber pistol there. And on a social media video of uncertain date, Campbell was present in the BMB-affiliated drug house on 230th Street, again with Francis, while BMB associate Ricardo Burgess displayed a firearm. (PSR ¶ 44).

Campbell also sold significant quantities of crack cocaine with BMB, in particular at the "Forts" location. Campbell did so over the course of many years, and kept doing so despite arrests for narcotics sales in 2012, 2014, and 2015. (*See* PSR ¶¶ 40-42, 48-52).

### III. The Defendant's Criminal History

On November 14, 2012, Campbell was arrested after selling crack cocaine and marijuana to an undercover NYPD officer. For this offense, Campbell eventually pled guilty to criminal sale of a controlled substance in the third degree, a felony, and received five years' probation. Thus Campbell committed nearly all of the other crimes detailed in the PSR while on bail or probation. (*See* PSR ¶¶ 79, 82). Campbell also pled guilty to the misdemeanor of unlawful possession of marijuana after NYPD officers observed him selling the drug on July 6, 2015 and arrested him in possession of a significant quantity of the substance. (PSR ¶ 80).

### IV. The PSR and Guidelines Calculation

The PSR, the plea agreement, and the defendant's submission all agree that the applicable Guidelines Range is 108 to 135 months' imprisonment. (PSR ¶¶ 21, 118; Dkt. 1907 at 1).

## V. Discussion

Campbell was a core member of BMB who carried guns and engaged in violence on behalf of the gang. He opened fire on an occupied home, urged another member to engage in violent retaliation against a rival, and spent years carry guns and selling crack cocaine. He did nearly all this—including the shooting—while on bail or probation from a prior drug arrest. Indeed, Campbell was caught with drugs or guns again and again after his first arrest in 2012 (*see* PSR ¶¶ 42-51), yet brazenly continued to commit crimes with this violent organization. A Guidelines sentence is fully warranted to protect Campbell's community from further crimes by him, to finally deter him from his serial criminal behavior, and to promote the respect for the law that Campbell's previous encounters with the judicial system have failed to instill. *See* 18 U.S.C. § 3553(a).

Campbell's submission offers no good argument for a below Guidelines sentence. Although Campbell had a difficult upbringing, so did many people in the community he victimized, yet they did not commit shootings and sell crack cocaine. Indeed, as the PSR reflects, Campbell's family tried hard to give him a chance to succeed. (*See* PSR ¶¶ 88-91). Instead, by his own actions—in particular his own attempts to use guns and drugs to achieve a dominant social and economic possession without the commensurate hard work—Campbell only made it more difficult for others in his community to succeed despite similar hardships. And although Campbell notes that some defendants in this case received significantly lower sentences than the Guidelines he faces, the defendants who received such sentences were generally narcotics offenders, who had engaged in little if any violence and often were not full members of BMB. Campbell offers no basis to distinguish himself from the core, violent members of the gang, who appropriately received sentences around, or above, the Guidelines he now faces.

8

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court impose a Guidelines sentence.

Dated: New York, New York
November 22, 2017

                                        Respectfully submitted,

                                        JOON H. KIM,
                                        Acting United States Attorney for the
                                        Southern District of New York,

By:    \_\_/s/_____
           Hagan Scotten
           Rachel Maimin
           Jessica Feinstein
           Drew Johnson-Skinner
           Assistant United States Attorneys
           (212) 637-2410