```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          15 CR 95 (AJN)

 5   HAKEEM CAMPBELL,

 6              Defendant.

 7   ------------------------------x
                                             New York, N.Y.
 8                                           November 28, 2017
                                             3:00 p.m.
 9

10   Before:

11                    HON. ALISON J. NATHAN,

12                                           District Judge

13
                              APPEARANCES
14
     JOON H. KIM
15        Acting United States Attorney for the
          Southern District of New York
16   HAGAN SCOTTEN
          Assistant United States Attorney
17
     KORIBANICS & KORIBANICS
18        Attorneys for Defendant
     MICHAEL KORIBANICS
19
```

1             (In open court, case called)
2             MR. SCOTTEN:  Hagan Scotten for the government.
3             THE COURT:  Good afternoon, Mr. Scotten.
4             And for the defendant?
5             MR. KORIBANICS:  Good afternoon, Judge, my name
6    Michael Korbanics.  I've been appointed pursuant to CJA
7    representing Mr. Campbell, present in court in custody, seated
8    to my right.
9             THE COURT:  Good afternoon, Mr. Korbanics.  Good
10   afternoon, Mr. Campbell.
11            THE DEFENDANT:  Good afternoon, your Honor.
12            THE COURT:  Please be seated.
13            We're here for sentencing today in United States
14   versus Campbell, 15 CR 95.  In preparation for today's
15   proceeding, I have reviewed the probation report, which is
16   dated November 7, 2017.  I have also received and reviewed the
17   following additional submissions:  I have the defendant's
18   submission dated November 20, 2017.  It has as attachments a
19   number of letters from family members and friends of
20   Mr. Campbell.  I have the government's submission, which is
21   dated November 22nd, 2017, and then I have the supplemental
22   submission on behalf of Mr. Campbell that was submitted
23   yesterday, November 27, 2017, and that consists of two
24   additional letters in support of Mr. Campbell as well as a
25   certificate of achievement from a course at MCC.

1            Counsel, is there anything else I should have in front
2    of me for purposes of today's sentencing?
3            MR. SCOTTEN:  No, your Honor.
4            MR. KORIBANICS:  No, Judge.
5            THE COURT:  Can you confirm that you received each
6    other's submissions?
7            MR. SCOTTEN:  Yes, your Honor.
8            MR. KORIBANICS:  Yes, I have, Judge.
9            THE COURT:  Thank you.  Turning first to the
10   presence report, Mr. Korbanics, for the record, have you
11   reviewed the presentence report and discussed it with your
12   client?
13           MR. KORIBANICS:  Yes, I have, judge.
14           THE COURT:  Mr. Campbell, did you have an opportunity
15   to review the presentence report and discuss it with your
16   attorney?
17           THE DEFENDANT:  Yes, your Honor.
18           THE COURT:  And Mr. Scotten, for the record, have you
19   reviewed the presentence report?
20           MR. SCOTTEN:  Yes, your Honor.
21           THE COURT:  Counsel, setting aside for a moment the
22   calculation of the sentencing guidelines, are there any
23   objections to the report regarding factual accuracy?
24           MR. SCOTTEN:  No, your Honor.
25           MR. KORIBANICS:  No, your Honor.  Judge, there was one

1   that submitted, it was just it says the Virgin Islands instead
2   of Jamaica, but nothing of any substance, Judge.
3            THE COURT:  And that was chanced in the revision?
4            MR. KORIBANICS:  Yes, it was, Judge.
5            THE COURT:  Hearing no objections, I adopt the factual
6   recitations set forth in the PSR.  The report will be made a
7   part of the record in this matter and placed under seal.  If an
8   appeal is taken, counsel on appeal may have access to sealed
9   report without further application to this Court.
10           Turning to the guideline calculation, as counsel is
11  aware, I'm no longer required to follow the United States
12  Sentencing Guidelines, but I am still required to consider the
13  applicable guidelines in imposing sentence.  I must therefore
14  accurately calculate the sentencing guideline range.
15           In this case, there was a plea agreement to which the
16  parties stipulated to a particular calculation of the
17  guidelines.  Counsel, am I correct that the calculation in the
18  PSR is in accord with that agreement?
19           MR. SCOTTEN:  Yes, your Honor.
20           MR. KORIBANICS:  Yes, Judge.
21           THE COURT:  And I presume, but I will ask, any
22  objections to that calculus?
23           MR. SCOTTEN:  No, your Honor.
24           MR. KORIBANICS:  No, Judge.
25           THE COURT:  Based on the parties' agreement and the

absence of objection, my independent evaluation of the sentencing guidelines, I accept the guidelines calculation in the PSR. Accordingly, using the November 1st, 2017 edition of the sentencing guidelines, I do find that the offense level is 29, the criminal history category is three, and that produces a guideline range of 108 to 135 months imprisonment. I note that probation recommends a sentence at the bottom of the guidelines of 108 months.

Counsel, I believe your agreement also -- you also agreed not to seek an upward or downward departure within the advisory system, is that correct?

MR. SCOTTEN: Yes, your Honor.

MR. KORIBANICS: Yes, Judge.

THE COURT: Nevertheless, I have considered whether there's an appropriate basis for departure within the guidelines system and did not find any grounds warranting a departure. Your agreement left open the possibility of arguing for a variance, as defense counsel has done in his written submission.

I will hear from counsel as to their arguments regarding a reasonable sentence, taking into account the 3553(a) factors and beginning with the government, Mr. Scotten.

MR. SCOTTEN: Yes, your Honor. You have our submission, I won't expand at length. Mr. Campbell is a core member of a violent gang who personally committed acts of

1    violence.  We don't see any reason that the Court should depart

2    from the guidelines.  I think the arguments in defense

3    counsel's submission shouldn't persuade the Court.  For the

4    reasons stated in our submission, essentially many people face

5    hard upbringings, they do not do what Mr. Campbell did.

6              I want to take a second to note, I think the Court

7    only sees defendants in this case because they come before the

8    Court and you get the full holistic analysis of a PSR.  In the

9    course of investigating this case, the government had the

10   privilege of interviewing many people, including many young men

11   from this area, and there are many people, as I'm sure the

12   Court already knows, who have faced similar hardships to the

13   defendants, whose hardships are not particularly harsh in the

14   context of this case, and do not commit crimes.  Instead,

15   growing up in a neighborhood with someone like the defendant

16   makes it harder for them to do what they want to, make an

17   honest living.  That only becomes more difficult when violence,

18   drug dealing, gunplay are at least temporarily rewarded, as in

19   the case of the defendant, who was able to make more money,

20   obtain a higher social position by being violent.  And I think

21   that he shouldn't seek the excuse of the circumstances of his

22   upbringing because he's just making it more difficult for other

23   people to escape from the same circumstances.

24             The Court usually asks which other defendants this

25   defendant may be most comparable to.  There were two that I

1  thought with worth discussing briefly, one is Shaquille Dewar,
2  and the other is Tyrone Gray.  I think Mr. Dewar is probably
3  the nearest comparative, accepting that every defendant is
4  unique and so no one compares precisely.  Mr. Dewar was similar
5  to Mr. Campbell, both members of the gang, both repeated
6  arrests for gun possession, both have a single shooting.  They
7  are somewhat distinct in that Mr. Dewar's shooting was at an
8  identifiable person, whereas Mr. Campbell was shooting at a
9  house, albeit a house that he choose because he knew a
10 particular person was inside it.  So the guidelines are
11 somewhat different there, and Mr. Dewar's were hinged on
12 attempted murder, whereas able defense counsel was able to
13 persuade the government to offer a guidelines hinged on
14 aggravated assault here, but they're really very similar
15 shootings.  The guidelines ended up being somewhat similar
16 because Mr. Campbell was a much more profuse drug dealer than
17 Mr. Dewar, and they are just generally quite similar.
18         The Court effectively sentenced Shaquille Dewar to 114
19 months.  The sentence was 97 months, but the Court made clear
20 that the Court was taking 17 months off to account for a state
21 sentence that the Bureau of Prisons would not have otherwise
22 have credited.  I think that's the best comparative.
23         I also want to mention Tyrone Gray as sort of a
24 bracket in response to defense counsel's argument for a very
25 low sentence.  Gray is someone actually close to Mr. Campbell,

they did some of the same crimes together, but so far as the evidence we have, sort of less culpable in numerous ways; although certainly associated with a gang, he was not as much of a core member. He sold drugs, but so far as our evidence indicates not to the same volume. He did also possess guns on multiple occasions. And Gray was also implicated in a shooting, but Gray was not the shooter in that case, he was simply in a car with another person who he was in league with and who opened fire. And Gray received an 84-month sentence for what I think could only be described as similar but less severe conduct.

So for all those reasons, we submit the defendant should received a within-guidelines sentence. I will rest subject to Court's questions.

THE COURT: Okay. Thank you, Mr. Scotten.

Mr. Koribanics.

MR. KORIBANICS: Thank you, Judge.

Judge, I hope I covered most of what I needed to cover in my sentencing memo.

THE COURT: I ask you to pull up the microphone, thank you.

MR. KORIBANICS: I differ in the government's position about Mr. Campbell's background. There's something about him, Judge, that struck me different, and I think he's maybe -- I think he is, although I don't know the other defendants in this

1  case, I don't have the intimacy that the government has, I
2  represented him, I only represented Mr. Campbell.
3  　　　　　But of the letters he got, and part of the Court's
4  analysis in sentencing is where will the person go from after
5  his sentencing after release of incarceration?  What was
6  interesting to me was that -- he's present with his mom, his
7  dad, his sisters, and his family, is his mother's letter to me
8  was the most telling because it told me something a little
9  different.  And I read a lot of letters from mothers, I'm sure
10 you have, most of them always mitigate or say not my son, or
11 this was something that I don't understand.  She said that she
12 was always concerned that he was taking the wrong turn, and
13 that they tried to do what they could.
14 　　　　　But he got caught up at a young age with a -- I don't
15 have to educate the Court as to this group of people who were
16 members and also associates who were in the neighborhood.  And
17 his started when he first got -- according to the PSR report,
18 when he first had some physical run-ins and fights and things
19 of that nature, then he got sucked into the street.  And he was
20 very candid in the PSR about that, he was interested in the
21 street.
22 　　　　　But getting back to his mother's letter, what I found
23 most moving about it, and I hope the Court does, is all that
24 aside, and accepting him the way he is and the mistakes he
25 made, they sit here ready to embrace him and give him a

1  positive environment when he comes out, whatever the Court
2  sentences him to today. And I think I speaks volumes, that he
3  will have that support that will make it not as necessary to
4  give a long sentence to.
5  And think what else was moving, Judge, is the letter
6  from his employer, he's got skills. He can go out and make
7  something of himself after he serves his time, whatever it be,
8  from the Court.
9  I would ask that the Court sentence what I requested
10  in my sentencing memorandum, but I also ask the Court to take
11  into consideration those special qualities about Hakeem that
12  will allow him to be a productive member of society, given his
13  young age and the fact that he has this family support.
14  I think that's reflected in the letters. And I don't
15  think Hakeem makes excuses for anything other than he thought
16  that life was glamorous like it's portrayed. Frankly, Judge,
17  when you look at his state court -- it's very difficult for a
18  young man sitting in his seat. And I experienced it as an
19  attorney when you go through the state system and it's slap on
20  the wrist here, probation there, I'm not -- everybody has their
21  numbers, everybody has difficulties in moving cases and the
22  strength of cases and sheer volume.
23  But then you come here, Judge, and you don't even have
24  to speak a word when you walk into this courtroom and realize
25  this is the real deal, and you realize that the government will

1    aggressively prosecute you. When Mr. Campbell, Judge, actually

2    had a -- I'm his second attorney. He had a lower plea offer

3    prior to this and he didn't take it. And he learned about the

4    investigatory powers of the United States government, because

5    that's what sort of spurred on this aggravated assault aspect

6    of relevant conduct here.

7    So I am asking the Court, based on all those

8    surrounding circumstances, to take that into consideration and

9    realize no matter what sentence the Court metes out today in

10   the span of this young man's life, this is real time and this

11   is the first time in his career. And he's got a criminal case

12   history where it's really -- he's facing real time for real

13   events that he has to take responsibility for.

14   And I thank the Court for its time in hearing me. If

15   there's anything I could answer for the Court, I would be happy

16   to answer if I can.

17   THE COURT: Thank you, Mr. Koribanics. I don't think

18   I have additional questions.

19   Mr. Campbell, you don't have to make a statement, but

20   if you would like to, sir, you may do so now. Would you like

21   to?

22   THE DEFENDANT: I would like to say good afternoon,

23   your Honor.

24   THE COURT: Good afternoon.

25   THE DEFENDANT: I would like to say good afternoon to

everybody present here.  I will ask for time to take the time to take a minute to apologize to my family, and I would like to apologize on behalf of my decisions I made, that I did make bad decisions, and I'm here to accept my decision.  I was raised in a good home, I was just carried away by certain wrong decisions in my environment.

And with all due respect, I did try to turn around.  I did see the road I was going down.  I did try to break that certain behavior, try to better myself, I don't want my -- my mother and father was always in my life, I want to do the same thing for my daughter.  So with all that said, I seen the destruction, I tried to change.  And with very limited education, the best opportunity for me was to get a job in construction, so I took an opportunity in that.  And I was on the right path, doing the right thing, and just the bad decisions you do make, it does affect you in the long run.

As I stand before you here today, I was a changed person before my incarceration.  I was on the right path trying to get my life together, but sad to say that the past does haunt you, and I'm suffering from this right now.  So I ask to have a leniency and consideration for me and my family, that I was -- I am a different person, and I was -- I am going to be a different person in society.  And I would like to say thank you very much, and that's it.

THE COURT:  Thank you, Mr. Campbell.

Counsel, anything further? Any reason why sentence should not be imposed at this time?

MR. SCOTTEN: No, your Honor.

MR. KORIBANICS: No, Judge, thank you.

THE COURT: As I stated, the guidelines range applicable to this case is 108 to 135 months imprisonment. Under the Supreme Court's decision in *Booker* and its progeny, the guideline range is only one factor that the Court must consider this deciding the appropriate sentence.

I'm also required to consider the other factors set forth in 18, USC, Section 3553(a). These include the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, to provide the defendant with needed educational other vocational training. I am seeking to account the kinds of sentences available, as I said, the guideline range, any pertinent policy statement, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

I am required to impose a sentence sufficient but no greater than necessary to comply with the purposes I just

described. I have given substantial thought and attention to the appropriate sentence in this case in light of the 3553(a) factors and the appropriate purposes of sentencing as reflected in the statute.

Mr. Campbell stands convicted of what is a very serious offense. He pled guilty to a count of participating in a racketeering conspiracy in aid of the Big Money Bosses gang, BMB. Mr. Campbell was a vocal, violent, and core member of this street gang. The gang trafficked in narcotics, including crack cocaine, marijuana, and other pills. Members and associates kept firearms and engaged in acts of violence, including shootings, stabbings, and gang assaults. BMB has a violent cultural norm against snitching or cooperating. This gang ravaged the area it occupied with dangerous drugs and violence.

As noted, Mr. Campbell was a core member of BMB. He sold crack cocaine and carried guns and engaged in violence on behalf of the gang, and also encouraged others to engage in acts of violence on behalf of the gang. Specifically, he, along with fellow gang members, opened fire on an occupied home of a rival gang member. He determined, prior to the shooting, that the rival was home, that there were people present, and then fired multiple rounds into the home. Thankfully, nobody was injured. Needless to say, any number of people could have been injured or killed as a result of this extraordinarily

dangerous and violent conduct. As noted, he encouraged other BMB members to engage in retaliatory acts of violence.

Mr. Campbell has criminal history that includes prior narcotics offenses. Troublingly, he did engage in much of this criminal conduct while on bail or probation.

Given Mr. Campbell's membership in BMB, his role in the conspiracy, involvement in the sale of a dangerous drug, crack cocaine, and his brazen and dangerous acts of violence and carrying firearms, I have no doubt that a serious sentence is warranted in order to deter Mr. Campbell and others, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and to protect the public from further crimes of the defendant.

Of course, I must and I do take into account the history and characteristics of the defendant.

First and foremost, Mr. Campbell pled guilty and has accepted responsibility for his conduct. I found his statement today expressing remorse, at least for the situation he's caused his family to be in, to be genuine. He indicated that he made choices away from this conduct prior to his arrest. I don't know that that's the case, but I will accept that possibility, and again, I found Mr. Campbell's statement with regard to it to be genuine.

I read carefully the letters submitted from his family members and friends and associates. He does have an employment

history, which is encouraging, in terms of rehabilitation. He has ties to the community and the support of his family, who wrote to me and many of whom are here today. I think these are also important factors because they suggest a level of optimism with regard to his chances for rehabilitation. I take all of these factors into account.

I will also sentence to avoid unwarranted sentence disparities. I have worked hard to try to avoid sentence disparities in this case. Every sentencing is individualized determination, but I do my best to assess relative culpability within the overall conspiracy as charged in the indictment here, as well as generally seeking to avoid unwarranted sentence disparities among defendants with similar records who have engaged in similar conduct.

In sum, I have no doubt, as I said, that a very substantial sentence is warranted for the reasons I have indicated. But I am going to vary somewhat below the guideline range in lights of the factors that I have just discussed.

Mr. Campbell, I will now state the sentence I intend to impose.

It is the judgment of this Court that you be sentenced to a period of 96 months, to be followed by a period of three years of supervised release.

During your term of supervised release, the standard conditions of supervision shall apply, and those are outlined

1     on pages 33 through 34 of the PSR.
2                In addition, you will be subject to the following
3     mandatory conditions:  You must not commit another federal,
4     state or local crime.
5                You must not unlawfully possess a controlled
6     substance.  I will suspend the mandatory drug testing condition
7     because I will impose a special condition regarding drug
8     treatment and testing.
9                You must cooperate in the collection of DNA as
10    directed by the probation officer.
11               And in addition to the standard conditions and those
12    mandatory conditions, the following special conditions shall
13    apply:  You will participate in an outpatient treatment program
14    approved by the United States Probation Office, which may
15    include testing to determine whether you have reverted to using
16    drugs or alcohol.
17               You must submit your person, residence, place of
18    business, vehicle or any property or electronic devices under
19    your control to a search on the basis that the probation
20    officer has reasonable suspicion that contraband or evidence of
21    a violation of conditions of supervised release may be found.
22               You will participate in an educational or vocational
23    services program and abide by the rules and regulations of that
24    program.  This may include high school equivalency education,
25    job readiness training skills, development training, and other

18
HBSTCAMS

1    classes related to skills and employment.

2    　　　　I do recommend that you be supervised in your district
3    of residence.  I waive the fine because I don't believe you
4    have the ability to pay a fine.  I am imposing a mandatory
5    special assessment of $100, which shall be due immediately.

6    　　　　Does either counsel know of any legal reason why the
7    sentence should not be imposed as stated?

8    　　　　MR. SCOTTEN:  No, your Honor.

9    　　　　MR. KORIBANICS:  I do not, Judge.

10   　　　　THE COURT:  The sentence as stated is imposed.  I find
11   that the sentence is sufficient but no greater than necessary
12   to satisfy the sentencing purposes that I described earlier.

13   　　　　Mr. Campbell, when you are released on supervised
14   release you will have the guidance and support of the probation
15   department.  As you reestablish your day-to-day life during
16   your period of supervised release, I urge you to take advantage
17   of those resources, as the people in probation are committed to
18   helping you succeed.  That said, I have to caution you, you
19   must comply strictly with all of the conditions of your
20   supervised release.  If you are brought back before me for a
21   violation of those conditions, I may sentence you to another
22   term of imprisonment, and I hope and expect you won't put me to
23   that decision.

24   　　　　Mr. Koribanics, any requests regarding designation or
25   the like?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1        MR. KORIBANICS:  Judge, I ask the Court to designate
2   him as close to his family as possible.
3        THE COURT:  They're in the New York City area?
4        MR. KORIBANICS:  They're in the Bronx.
5        THE COURT:  I recommend to the Bureau of Prisons that
6   Mr. Campbell be considered for placement in a facility as close
7   to the New York City area as possible in order to facilitate
8   maintenance of ties with his family.
9        Any other requests, Mr. Koribanics?
10       MR. KORIBANICS:  No, Judge.
11       THE COURT:  Mr. Scotten, any remaining counts or
12  underlying indictments that need to be dismissed?
13       MR. SCOTTEN:  Yes, your Honor, the government moves to
14  dismiss all open counts against the defendant.
15       THE COURT:  The motion is granted.  They are the
16  dismissed.
17       Mr. Campbell, I will inform you of appellate rights.
18  To the extent you have not given up your right to appeal your
19  conviction and your sentence through your plea of guilty and
20  the agreement that you entered into with the government in
21  connection with that plea, you have the right to appeal.  If
22  you're unable to pay the cost of an appeal, you may apply for
23  leave to appeal in forma pauper, meaning you don't have pay a
24  filing fee.  The notice appeal must be filed within 14 days of
25  the judgment of conviction.

HBSTCAMS

1     Counsel, anything else that I can address at this
2  time?
3     MR. SCOTTEN:  Not from the government.  Thank you,
4  your Honor.
5     MR. KORIBANICS:  Not from the defense, your Honor.
6     THE COURT:  Mr. Campbell, good luck to you, sir.
7  We're adjourned.
8                           o0o